Nos. 23-2323, 24-1095

# United States Court of Appeals for the Federal Circuit

SWARM TECHNOLOGY LLC,

*Appellant*,

v.

AMAZON.COM INC., AMAZON WEB SERVICES, INC.,

*Cross-Appellants.*

On Appeal from the United States Patent and Trademark Office Patent Trial and Appeal Board in Nos. IPR2022-00283, IPR2022-00633 Administrative Patent Judges Gregg I. Anderson, Scott B. Howard, and Michael R. Zecher

**REPLY BRIEF OF CROSS-APPELLANTS**

Hallie Kiernan
WHITE & CASE LLP
1221 Avenue of the Americas
New York, NY 10020
(212) 819-7576
hallie.kiernan@whitecase.com

Adam M. Greenfield
Mark S. Davies
WHITE & CASE LLP
701 13th Street, NW
Washington, DC 20005
(202) 626-3600
adam.greenfield@whitecase.com
mark.davies@whitecase.com

*Counsel for Cross-Appellants Amazon.com, Inc. and Amazon Web Services, Inc.*

September 18, 2024

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES .......... iii

INTRODUCTION .......... 1

ARGUMENT .......... 2

I. The Board Incorrectly Construed "Proactively" .......... 2

A. The Board's Interpretation Is Inconsistent with the Clear Examples in the Specification .......... 2

B. The Board Erred by Adopting a Supposed "Plain Meaning" That Is Narrower Than the Specification .......... 6

C. The Board's Construction Leads to Absurd Results .......... 9

II. The Board Erred By Misapplying the Law of Obviousness in Evaluating Lurie .......... 10

CONCLUSION .......... 15

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*3M Innovative Props. Co. v. Tredegar Corp.*,
725 F.3d 1315 (Fed. Cir. 2013) .......... 4

*CUPP Computing AS v. Trend Micro Inc.*,
53 F.4th 1376 (Fed. Cir. 2022) .......... 4

*Intel Corp. v. Qualcomm Inc.*,
21 F.4th 801 (Fed. Cir. 2021) .......... 6

*Kaufman v. Microsoft Corp.*,
34 F.4th 1360 (Fed. Cir. 2022) .......... 2

*Medytox, Inc. v. Galderma S.A.*,
71 F.4th 990 (Fed. Cir. 2023) .......... 12

*Merck & Co. v. Teva Pharms. USA, Inc.*,
395 F.3d 1364 (Fed. Cir. 2005) .......... 6

*Novartis Pharms. Corp. v. Accord Healthcare, Inc.*,
38 F.4th 1013, 1016 (Fed. Cir. 2022) .......... 8, 9

*Regeneron Pharms., Inc. v. Merus N.V.*,
864 F.3d 1343 (Fed Cir. 2017) .......... 14

*Trustees of Columbia Univ. v. Symantec Corp.*,
811 F.3d 1359 (Fed. Cir. 2016) .......... 3

*Unwired Planet v. Google Inc.*,
841 F.3d 995 (Fed. Cir. 2016) .......... 14

## INTRODUCTION

These consolidated appeals address the Board's final written decisions in two IPRs challenging related Swarm patents. This reply supports Amazon's appeal regarding the '275 patent. There, the Board erred by adopting an improperly narrow construction of what constitutes "proactively" retrieving tasks. The Board's construction excludes processors that receive an initial "kickoff" notification, even when those processors later "can retrieve and complete additional tasks without further notifications." Appx0136-0137. This construction is contrary to law and to the plain meaning of the term as described by the '275 patent specification. Indeed, the Board's improper construction excludes the only examples in the '275 patent.

In response, Swarm admits that examples in the '275 specification should be included in the plain meaning and that Lurie's prior art TCW co-processors are "proactive" under these examples. This alone should doom the Board's decision. Swarm otherwise recharacterizes Amazon's arguments where it has no good response and instead introduces a separate unrelated claim term, "autonomous," which neither formed the basis of the Board's decision nor is before this Court.

This Court should find for Amazon that the Board erred in construing the plain meaning of "proactively" narrower than the specification's only examples. Alternatively, the Board erred in its evaluation of obviousness, as Swarm's failure

to even mention the key cases confirms. In either case, this Court should vacate and remand regarding the ’275 patent.

## ARGUMENT

### I. THE BOARD INCORRECTLY CONSTRUED “PROACTIVELY”

#### A. The Board’s Interpretation Is Inconsistent with the Clear Examples in the Specification

There should be no dispute that the plain meaning of “proactively” must include the only examples in the ’275 patent specification. RedBr. at 69-70. This meaning, “at least includes that co-processors periodically send an agent to monitor the task pool for tasks to retrieve.” RedBr. at 69 (citing Appx0167 (’275 patent 2:48-51)). The Board erred by construing “proactively” to exclude this “periodically” example from the specification. According to the Board, if there is an initial kickoff notification that tasks are available, a co-processor never can be considered proactive even if the co-processor later periodically sends an agent to monitor the task pool for tasks to retrieve. Appx0136-0137. The Board’s narrow construction cannot be correct. *See* RedBr. at 69-70; *see also Kaufman v. Microsoft Corp.*, 34 F.4th 1360, 1372 (Fed. Cir. 2022) (“A claim construction that excludes a preferred embodiment is rarely, if ever correct and would require highly persuasive evidentiary support.” (citation omitted)).

Swarm seeks to confuse this simple issue by asserting that this appeal is the first time Amazon proposed a construction of “proactively” “such that the phrase

'proactively retriev[ing] a first task from the task pool,' would be satisfied in Lurie by activity that occurs only after a notification is sent to the TCW that a task is available." YellowBr. at 49. To be clear, Amazon has not and is not requesting a construction for "proactively" other than the plain meaning in view of the specification. Consistent with its arguments on appeal, Amazon's position has always been that Lurie's TCWs proactively retrieve tasks from the task pool in the same manner as the examples in the '275 patent specification. *See* RedBr. at 74 ("It cannot be correct that prior art disclosing the very 'example' of 'proactive' activity in the '275 patent somehow fails to disclose 'proactive' activity for purposes of obviousness."); *see also* Appx4282 ("The prior art relied on in this Petition discloses the subject matter of the challenged claims under any reasonable construction, including their plain meaning."); Appx4300 (describing how Lurie "proactively retrieves" tasks from a task pool "without being instructed by the TCC"); Appx4303-4305. Lurie, therefore, discloses "proactively retrieving" under any reasonable construction, including its plain meaning.

The only construction Amazon has sought is the plain meaning consistent with the specification. *See Trustees of Columbia Univ. v. Symantec Corp.*, 811 F.3d 1359, 1363 (Fed. Cir. 2016) ("The only meaning that matters in claim construction is the meaning in the context of the patent."). Any reasonable plain meaning interpretation of "proactively" at least includes—rather than excludes, as the Board determined—

the only examples in the ’275 patent specification. Therefore, “proactively” includes “periodically” sending an agent to monitor the task pool for tasks to retrieve. RedBr. at 68-69 (citing Appx0167, 2:48-51).

If the Board was going to find that the claim term and, therefore, the claim excludes express examples from the specification, it was required to find “highly persuasive” evidence. *See CUPP Computing AS v. Trend Micro Inc.*, 53 F.4th 1376, 1381 (Fed. Cir. 2022) (requiring “‘highly persuasive’ evidence to read claims as excluding a preferred embodiment of the invention”); *see also 3M Innovative Props. Co. v. Tredegar Corp.*, 725 F.3d 1315, 1333 (Fed. Cir. 2013) (“It is axiomatic that we will not narrow a claim term beyond its plain and ordinary meaning unless there is support for the limitation in the words of the claim, the specification, or the prosecution history.”). The Board failed to cite any evidence, let alone “highly persuasive” evidence, that “proactively” retrieving excludes these examples.

Seemingly recognizing the ***lack*** of such evidence before the Board, Swarm admits that “‘proactively’ may include ‘periodically,’ as the specification provides.” YellowBr. at 51. Swarm attempts to distract from this admission by focusing on a different claim term altogether, “autonomous.” YellowBr. at 51. In Swarm’s view, “regardless of whether Swarm’s ‘proactive’ co-processors can operate ‘periodically,’ Amazon does not address that the co-processors must also be ‘autonomous.’” YellowBr. at 51.

That is a misdirection. The issue on appeal is not whether the Board erred in construing "autonomous," but whether the Board erred in construing "proactively." Amazon had no reason to address a claim term on appeal that was not a basis for the Board's Final Written Decision.

Swarm raised the meaning of "autonomous" and whether Lurie disclosed claim limitations relating to "autonomous" co-processors in its Patent Owner Response and Sur-Reply. Appx6488, Appx6520 ("Patent Owner further submits that every claim of the '275 Patent (except claims 6, 14, 15, and 17) is patentable over the cited art at least because of the autonomous coprocessor limitation."); Appx8161-8162 ("The cited art fails to teach "autonomous" co-processors configured to 'proactively' retrieve tasks."). The Board was given an opportunity to rule on the meaning of "autonomous" and whether Lurie disclosed the "autonomous" claim limitations; it declined to do so, instead relying exclusively on the "proactively retrieving" limitation in deciding that Lurie (in view of Ethernet) did not render the '275 patent claims invalid for obviousness. Appx0130-0138. The meaning and obviousness of the "autonomous" limitations, therefore, are not properly before this Court.

Even if the construction of "autonomously" were before this Court, Swarm's proposed construction renders "proactively" and "autonomously" redundant, in contravention of settled law. It is a basic tenet of claim construction that claims

should not be construed to render terms superfluous. *See Intel Corp. v. Qualcomm Inc.*, 21 F.4th 801, 810 (Fed. Cir. 2021) (reaffirming that terms should not be construed so as to "render[] them void, meaningless, or superfluous"); *see also Merck & Co. v. Teva Pharms. USA, Inc.*, 395 F.3d 1364, 1372 (Fed. Cir. 2005) (holding a construction that gives meaning to all the terms is preferred). Here, Swarm argues that co-processors are "autonomous" when the co-processor "may interact with the task pool without being instructed to do so." YellowBr. at 51; *see also* Appx6488 ("The terms "autonomous" and "autonomously" are properly understood to describe a co-processor configured to retrieve and/or process tasks without first being instructed to do so by the controller or by the task pool."). Yet, the Board's construction of "proactively" already requires the co-processor act without "being told to act or not reactionary." Appx0118. To require "autonomous" to mean "interacting with the task pool ***without being instructed to do so***" would, thus, render one of the two claim terms redundant. Proactive and autonomous must, therefore, mean different things.

Regardless of the construction of "autonomous," the Board erred in construing "proactively" in a way that would exclude the express examples in the specification.

### B. The Board Erred by Adopting a Supposed "Plain Meaning" That Is Narrower Than the Specification

The Board erred not only in excluding the "periodically" example, but it also rendered meaningless two other statements from the '275 patent specification

describing "proactive" behavior. RedBr. at 70-71. The specification explains that a cell (or co-processor) is "proactive" when it (1) seeks a task when it becomes available for further processing or (2) obtains a task when it has no processing to perform. RedBr. at 70 (citing Appx0170 ('275 patent 8:29-38) and Appx0168 ('275 patent 3:8-12)). In excluding each successive retrieval after a kickoff notification, the Board committed legal error by narrowing the meaning of "proactively" beyond these usages in the '275 patent specification. RedBr. at 70. As explained in Amazon's opening brief, the specification discusses "acting 'proactively' only in terms of when a worker 'becomes available for *further processing*.'" RedBr. at 71 (emphasis in original). The '275 patent is silent, however, on whether the system requires an initial kickoff notification before co-processors can retrieve tasks proactively. RedBr. at 71.

In essence, the Board implied a negative claim limitation as part of the plain and ordinary meaning of "proactively"—*i.e.*, proactively does not include an initial kickoff notification even if later retrievals are without subsequent notifications. Appx0136 ("Contrary to our construction, Lurie's TCW 270 only takes tasks after receiving a kickoff notification and, therefore, it is not acting proactively."). But a negative claim limitation requires clear disclosure in the specification—for example, a reason to exclude the element, statements listing the disadvantages to an alternative, or distinguishing between alternatives. *See Novartis Pharms. Corp. v.*

*Accord Healthcare, Inc.*, 38 F.4th 1013, 1016 (Fed. Cir. 2022). Here, the Board cited no support, let alone "clear disclosure" in the '275 patent specification for excluding later "proactively" retrieving tasks simply because the retrieval of an initial task followed a kickoff notification. RedBr. at 71.

In its response, Swarm admits that the examples Amazon relies on are incorporated within the plain meaning of "proactively." YellowBr. at 53-54. Swarm also admits that "the '275 Patent never discusses an 'initial kickoff notification.'" YellowBr. at 52. This is precisely why Amazon agreed (and agrees) that the plain meaning was appropriate—the '275 patent specification describes with sufficient detail what constitutes "proactively" retrieving, without narrowing how the first task is retrieved or assigned. Swarm attempts to rewrite the '275 patent on appeal by arguing that "an initial kickoff to the co-processors is precisely what ***does not*** happen in the '275 patent claims." YellowBr. at 52 (emphasis in original). The '275 patent, however, does not offer guidance one way or the other and instead discusses only "how co-processors seek *additional* work once initial processing is complete." RedBr. at 71 (emphasis in original). Swarm cannot amend its patent through the appeal process.

Because—as Swarm admits—the patent is silent on the issue of a kickoff notification, the Board could not have found the necessary support for its negative limitation. Without "a reason to exclude" an initial kickoff notification in the '275

patent specification, the Board erred in limiting the plain meaning of "proactively." *See Novartis*, 38 F.4th at 1016. Swarm's admission that the '275 patent never discusses an initial kickoff notification dooms the Board's construction.

Finally, Swarm attempts to read autonomous into the "proactively retrieving" limitation. As explained above, the construction of autonomous is neither relevant to the Board's decision nor before this Court. *See supra* Section I.A.

### C. The Board's Construction Leads to Absurd Results

The Board's construction leads to the absurd result that prior art utilizing the example of "proactively retrieving" relied on by the Board is found not to disclose that same example. RedBr. at 72-73. As Amazon explained, the Board admitted (and Swarm now concedes) that "one example of acting 'proactively' in the context of the '275 patent" is that "each co-processor may be configured (e.g., programmed) to periodically send an agent to monitor the task pool for available tasks appropriate to that co-processor." RedBr. at 73 (citing Appx0119). The Board even relied on Lowenthal's discussion of Lurie in construing "proactively" retrieving, and yet finds that Lurie does not disclose this claim limitation. RedBr. at 73 n.9.

Rather than respond to Amazon's argument, Swarm contends that this argument belongs in the obviousness analysis. YellowBr. at 55, n.17. Amazon disagrees. The Board's inconsistent treatment of Lurie shows the error in the Board's construction. *See* RedBr. at 73-74.

Even if the obviousness discussion were the correct place to address Amazon's argument, there too Swarm does not actually respond to the absurd result Amazon identified. *See generally* YellowBr. at 55-60. The Board acknowledged that both (1) the example of proactively includes periodically sending an agent to retrieve tasks and (2) Lurie teaches an agent identifying and retrieving available tasks. RedBr. at 73 (citing Appx0119 and Appx0132). Yet the Board also found that Lurie does not teach "proactively retrieving" because of a dubious negative limitation entirely unsupported by the '275 patent specification. RedBr. at 73. Nowhere in its response does Swarm discuss the inconsistency between the Board's two findings or even cite the sections of the Board's Final Written Decision upon which Amazon relies. *Compare* RedBr. at 73 (citing Appx0119 and Appx0132) *with* YellowBr. at 55-60. Swarm's failure to acknowledge, much less respond to, the stark inconsistency between the Board's findings is telling.

## II. THE BOARD ERRED BY MISAPPLYING THE LAW OF OBVIOUSNESS IN EVALUATING LURIE

To the extent this Court disagrees that the Board's construction of "proactively" was erroneous, the Court should still find for Amazon because the Board erred by misapplying the law of obviousness in evaluating Lurie. RedBr. at 74. As explained in Amazon's opening brief, even under the Board's construction of "proactively," Lurie discloses that "each TCW 'can retrieve and complete additional tasks without further notifications' after the initial kickoff notification."

RedBr. at 75 (citing Appx0137). Thus, even if the TCW retrieves the first task because of the kickoff notification, each subsequent retrieval of a task does not occur because of a notification. The later unprompted task retrievals, therefore, meet the Board's construction of "initiating change rather than reacting to events (i.e., not being told to act or reactionary)." RedBr. at 75-76; Appx0118.

Swarm claims this argument "is directly contrary to the Board's fact finding." YellowBr. at 56. In so arguing, Swarm relies on an out of context quote from the Board's Preliminary Guidance on the appropriateness of the proposed supplemental claims. YellowBr. at 56-57 (citing Appx8117 (Preliminary Guidance) ("[T]he cited disclosures in Lurie do not appear to explain how the TCW's repeatedly take tasks to perform after an initial notification. . . . Here, each TCW obtains only the task for which it was notified by the ATD mechanism.")). Swarm's reliance on this alleged "fact finding" is misplaced. The Board cautioned both parties that in offering its Preliminary Guidance as to the supplemental claims, it "ha[d] not considered the parties' other substantive papers on the underlying merits of Amazon's challenges," but only the motion to amend and opposition. Appx7421. The Board also emphasized that:

> [T]he views expressed in this Preliminary Guidance are subject to change upon consideration of the complete record, including any revision to the Motion filed by Swarm. Thus, this Preliminary Guidance is not binding on the Board when rendering a final written decision.

Appx7421; *see also Medytox, Inc. v. Galderma S.A.*, 71 F.4th 990, 1000-01 (Fed. Cir. 2023) (recognizing the "non-binding and 'initial' nature" of Preliminary Guidance, the need to review the "totality of the record" anew after trial, and the different standards of review for the Preliminary Guidance and final written decision). Thus, the Board made clear that it was not considering the whole record and did not make a finding of fact based on "the underlying merits of Amazon's challenges." Appx7421.

Swarm also claims that the Board rejected the argument that Lurie can retrieve more than one task after receiving the kickoff notification. YellowBr. at 58.[1] But as it did with reading the lack of a kickoff notification into the '275 specification, Swarm now attempts to read multiple notifications into the disclosures of Lurie. YellowBr. at 59 ("[N]othing in Lurie discloses TCW's going back to the Task Pool a second or a third time without a second or a third notification."). The Board did not find that Lurie requires a notification for each successive trip back to the task

[1] Swarm claims that "Amazon's argument that TCWs can receive more than one task after an initial notification is also contrary to the specification." YellowBr. at 58 n.20. However, in doing so, Swarm relies on embodiments in Lurie that are different than the embodiment that Amazon relies on to show obviousness. *See* Appx1250 (Lurie ¶0053) (relating to a different embodiment); Appx1252 (Lurie ¶¶63-64) (describing an embodiment where the automatic task distribution mechanism "distributes" a task); Appx1254-1255 (Lurie ¶¶75, 77-78, 81) (describing different embodiments that assign a job to a TCW). Swarm's only citation to the embodiment on which Amazon relies actually highlights that the TCW "proactively" takes from the ATD mechanism. *See* Appx1256-14258 (Lurie ¶¶86-88, 92).

pool after the kickoff notification. Nor does Swarm point to anything in Lurie describing multiple notifications. YellowBr. at 59. All the Board found was that Lurie "requires a kickoff notification before it begins retrieving and completing tasks" and that Lurie is "reactive" because of this "receipt of a kickoff notification to retrieve the ***first*** task." Appx0137 (emphasis added). The Board made no finding as to whether a notification is sent again before a second task or any subsequent task is retrieved.

Moreover, Amazon's expert, Dr. Lowenthal, explained that in a bag-of-tasks scenario (as is the case in Lurie) the system would not require a notification before each task is retrieved and "acting without notification is the entire purpose of Lurie's bag-of-tasks technique." RedBr. at 77; Appx7342-7347 (Lowenthal ¶¶71-76). Indeed, the Board admitted that Lurie's bag-of-tasks approach means that additional tasks are retrieved and completed "without further notifications." RedBr. at 76 (citing Appx0137).

Swarm's factual argument on what Lurie discloses is unsupported by the Board's decision and nothing more than a distraction. So too is Swarm's assertion that Amazon failed to address the claims' further requirement that the co-processors "autonomously work together." YellowBr. at 59. Instead of addressing an irrelevant claim term and seeking to address a strawman factual dispute, Swarm should have responded to Amazon's arguments that (1) under *Unwired Planet*, prior art that

sometimes meets the limitations is sufficient for obviousness and (2) a "comprising" claim can include unrecited elements. RedBr. at 76-77. Swarm did not.

First, as explained in Amazon's opening brief, Lurie's proactive retrieval of additional tasks after the initial "kickoff" each meet the claim limitation under *Unwired Planet*. *See* RedBr. at 76 (quoting *Unwired Planet v. Google Inc.*, 841 F.3d 995, 1002 (Fed. Cir. 2016) ("prior art that sometimes meet[s] the claim elements [is] sufficient")). In *Unwired Planet*, the Federal Circuit confirmed that for obviousness "it is enough that the combination would sometimes perform" the claim limitations. *Unwired Planet*, 841 F.3d at 1002. As is clear from Lurie's disclosures, it will perform the claim limitations after the first task and for each subsequent task. *See* RedBr. at 74; *see also* Appx1263 (Lurie Figs. 5B-5D, ¶¶86-88, 95-67, 128). Swarm does not put forth any argument refuting *Unwired Planet*.

Similarly, Amazon noted that in "comprising" claims, the inclusion of an unrecited element in the prior art does not negate the disclosures that otherwise meet the recited claim limitations. *See* RedBr. at 77-78 (citing *Regeneron Pharms., Inc. v. Merus N.V.*, 864 F.3d 1343, 1352 (Fed Cir. 2017)). Just because Lurie includes an initial kickoff notification does not negate the proactive processors and retrievals occurring after the first task that would "proactively retrieve" a task under the Board's construction of the term. RedBr. at 77. Swarm ignores *Regeneron* and its application to Lurie.

Either reason is enough for this Court to find in Amazon's favor.

## CONCLUSION

The Board's determination that all claims of the '275 patent were not shown to be unpatentable should be vacated, and the case remanded.

Dated: September 18, 2024

Respectfully submitted,

*/s/ Adam M. Greenfield*
Adam M. Greenfield
Mark S. Davies
WHITE & CASE LLP
701 13th Street, NW, #600
Washington, DC 20005
(202) 626-3600
adam.greenfield@whitecase.com
mark.davies@whitecase.com

Hallie Kiernan
WHITE & CASE LLP
1221 Avenue of the Americas
New York, NY 10020
(212) 819-7576
hallie.kiernan@whitecase.com

*Counsel for Cross-Appellants Amazon.com, Inc. and Amazon Web Services, Inc.*

## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Circuit Rule 32(b)(3) and Federal Rule of Appellate Procedure 32(g)(1), I hereby certify that the foregoing brief complies with the type-volume limitations in Federal Circuit Rule 28.1(b)(3), because it contains 3,591 words, excluding the exempted parts under Federal Rule of Appellate Procedure 32(f) and Federal Circuit Rule 32(b)(2).

I further certify that this brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) because this brief was prepared using Microsoft Word 365 in 14-point Times New Roman font.

Date: September 18, 2024

Respectfully submitted,

*/s/ Adam M. Greenfield*
Adam M. Greenfield